O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSJ PEP TENNESSE LLC, ) | Case No. CV 14-03741 DDP (MANx) |
| ) | |
| Plaintiff, ) | **Order Granting Defendant CDPH's** |
| ) | **Motion for Leave to Amend** |
| v. ) | |
| ) | |
| KAMALA D. HARRIS, CALIFORNIA ) | |
| DEPARTMENT OF PUBLIC HEALTH; ) | |
| RONALD CHAPMAN; CALIFORNIA ) | |
| HIGHWAY PATROL; JOSEPH A. ) | |
| FARROW; OFFICE OF THE ) | |
| ATTORNEY GENERAL, CALIFORNIA ) | |
| DEPARTMENT OF JUSTICE, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| _____ ) | |

This matter comes before the Court on the Defendant CDPH's Motion for Leave to file counterclaims against Plaintiff OSJ PEP Tennessee, LLC, ("OSJ") and third party defendant, Leslee Sports, Inc. ("Leslee Sports"). After reviewing the materials submitted by the parties and hearing oral arguments, the Court GRANTS the motion.

///

///

**I.  Background**

In 2010, Defendant California Department of Public Health ("CDPH"), purchased 13.7 million respirator masks, worth $9.8 million, from a company named Global Protection USA, Inc. ("GPI"). (Def.'s Counterclaim and Third Party Complaint ¶ 11. ("CC-TPC")) CDPH alleges that after the purchase, it requested that GPI store the masks. (Id. at ¶ 13.)  CDPH alleges it stored the respirator masks at a warehouse, per a written contract with Amerinova, GPI's sister company,[1] establishing CDPH's right to lease approximately 85,000 square feet of storage space at the warehouse. (Id.)  The written agreement required payment of a periodic flat fee to be paid by CDPH to Amerinova. (Id.)  CDPH asserts it paid Amerinova in full for such fees. (Id.)

In February of 2012, CDPH notified Amerinova that it intended to remove the respirator masks from the warehouse since the lease was due to expire in June. (Id. at ¶ 14.)  At this time, GPI claimed it was entitled to additional storage fees. (Id.) CDPH asserts GPI's storage claim are false and have no legal basis as it did not enter into a separate contract with GPI to store the respirator masks. (Id. at ¶ 15.)

In June of 2012, CDPH demanded a return of the respirator masks upon the expiration of CDPH's lease agreement with Amerinova. (Id. at ¶ 16.)  CDPH alleges GPI refused to return the respirator masks and prevented CDPH from taking possession of the masks because of the alleged money owed for the storage fees. (Id. at ¶ 16.)

---

[1] Global Protection and Amerinova are both owned and controlled by Stephen Guarino.

GPI, for apparently unrelated reasons, filed for Chapter 11 bankruptcy in March 2012. (Id. at ¶ 19.) At this time, GPI claimed a warehouseman's lien against the respirator masks. (Id. At ¶ 16.) CDPH asserts GPI's warehouseman's lien is also patently false and has no legal basis. (Id. At ¶17.) In addition, as part of the bankruptcy proceeding, GPI's bankruptcy petition claimed the "receivable owed by California Department of Public Health for storage of 3M masks at CA facility." (Id. at ¶ 19.) During the bankruptcy proceedings, GPI sold all the rights and claims that Global Protection may have had against CDPH for the respirator masks to Global Safety, LLC ("Global Safety"), another company owned and operated by Guarino. (Id. at ¶ 20.)

At around the same time, GPI was pursuing administrative relief against CDPH through the California Victim Compensation and Government Claims Board ("VCGCB"); that relief was summarily denied on December 7, 2012, finding that all money owed by CDPH to Amerinova had been paid in full, and, as part of the bankruptcy proceedings, GPI had sold the right to pursue this claim to another entity, Global Safety. (Id. at ¶¶ 21-22.) CDPH alleges VCGCB gave GPI, Global Safety, and Guarino written notice that Global Protection's storage claims were rejected. (Id. at ¶ 24.)

CDPH alleges that, despite VCGCCB's notice, Guarino entered into discussion with Leslee Sports to sell GPI's warehouse storage claim. (Id. at ¶ 23.) CDPH further alleges that Guarino informed Leslee Sports that any claims or ownership of the respirator masks would be dependent on the adjudication of his claim sometime between December 7 and December 14, 2012. (Id.)

3

On or about December 14, 2012, Global Safety transferred its interest in the claim to Rhino Pets Series 1, LLC, which subsequently sold the interests of the masks to Leslee Sports. (Id. at ¶ 29.) CDPH alleges Leslee Sports paid Guarino through Rhino Pets an additional sum of approximately $455,000 for GPI's storage claim against CDPH. (Id. at ¶ 33.) Leslee Sports thereafter sold "all of its rights and title to the masks" to OSJ. (Id. at ¶ 29.)

At some point in this process, the masks had been transferred to the care of a "third party warehouse in Los Angeles" belonging to American Export Lines ("American Export"). (Id. at ¶ 36.) In or about January 2013, CDPH learned that the respirator masks were being sold to an unknown third party. (Id. at ¶ 37.) In February 2013, CDPH asked the California Highway Patrol to investigate the possible theft of the respirator masks and to recover those masks. (Id. at ¶ 38.) The respirator masks were recovered from American Export's warehouse on or about February 20-24, 2013 – a recovery which triggered this lawsuit, as Plaintiff maintained that it had a legal right to the masks, and also that CHP's taking of the masks violated the due process requirements of the Fourteenth Amendment. (See generally FAC.) On October 7, 2014, the Court dismissed a number of Plaintiff's claims, holding that CDPH owned the masks and a warehouseman's lien could not be exercised over state property, but allowing Plaintiff to proceed on its civil rights claims. (Dkt. No. 36.)

CDPH alleges that Leslee Sports and OSJ wrongfully exercised dominion over the respirator masks. (CC-TPC at ¶ 42.) CDPH alleges OSJ and Leslee Sports knew or had reason to know of VCGCB's

denial of GPI's claims and therefore had constructive knowledge that GPI's storage claims against CDPH were legally baseless. (Id. at ¶ 25.)

CDHP therefore seeks to file a counterclaim against Plaintiff OSJ and a third party complaint against Leslee Sports, for (1) Conversion; (2) Trespass to Chattels; and (3) Violation of California Penal Code section 496.

**II. Legal Standard**

In order to grant CDPH's Motion for Leave to Amend, CDPH must meet the Rule 15 standard for amendment of pleadings, and the Rule 20 standard for joinder.

**A.   Rule 15 Standard for Amendment of Pleadings**

Rule 15 of the Federal Rules of Civil Procedure, which governs requests for leave to amend, provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires." Fed. R. Civ. P. 15.  Granting leave to amend rests in the sound discretion of the trial court. Internat'l Ass'n of Machinists & Aerospace Workers v. Republic Airlines, 761 F.2d 1386, 1390 (9th Cir. 1985).  This discretion must be guided by the strong federal policy favoring the disposition of cases on the merits and permitting amendments with "extreme liberality." DCD Programs Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir. 1987).

Accordingly, the burden of persuading the Court that leave should not be granted rests with the non-moving party. Breakdown Services, Ltd. v. Now Casting, Inc., 550 F. Supp. 2d 1123, 1132 (C.D. Cal. 2007); See DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186-87 (9th Cir. 1987).

**B.    Rule 20 Standard for Joinder of Parties**

Rule 20(a) imposes two specific requirements for the permissive joinder of parties: (1) a right to relief must be asserted by, or against, each plaintiff or defendant relating to or arising out of the same transaction or occurrence or series of transactions or occurrences; and (2) some question of law or fact common to all parties must arise in the action. <u>Desert Empire Bank v. Ins. Co. Of N. Am.</u>, 623 F.2d 1371, 1375 (9th Cir. 1980). A party seeking joinder carries the burden of proof to show joinder is permissible. <u>See</u> <u>Wynn v. Nat'l Broad. Co.</u>, 234 F. Supp. 2d 1067, 1078 (C.D. Cal. 2002). "A determination on the question of joinder of parties lies within the discretion of the district court." (<u>Id.</u>)

**III. Discussion**

**A.    Leave to Amend Under Rule 15**

CDPH seeks leave to file its Counterclaim and Third Party Complaint against Plaintiff OSJ and Third Party Defendant Leslee Sports. as it would dramatically alter the nature of the litigation; and (2) CDPH's proposed counterclaims are futile as they are based on the notion that OSJ wrongfully possessed the masks.

**1.    Prejudice, Delay, and Bad Faith**

Plaintiff argues that the Court should deny CDPH's motion because CDPH waited over a year to seek leave and adding the counterclaims now would severely prejudice Plaintiff's prosecution of its case. CDPH argues that it should be allowed to add its counterclaims because this is its first request for leave to amend, Plaintiff has had numerous opportunities to amend, and Plaintiff

6

would not be prejudiced by the addition of the counterclaims because trial is still a year away.

Four factors are commonly taken into account to assess the propriety of a motion for leave to amend: bad faith, undue delay, undue prejudice to the opposing party, and futility of amendment. Johnson v. Buckley, 356 F.3d 1067, 1077 (9th Cir. 2004); See Forman v. Davis, 371 U.S. 178, 182 (1962). These factors, however, are not of equal weight; prejudice is the crucial factor. U.S. v. Webb, 655 F.2d 977, 980 (9th Cir. 1981). Absent prejudice, or a strong showing of any of the remaining reasons for denying leave to amend, there exists a presumption under Rule 15(a) in favor of granting a leave to amend. Breakdown Servs., Ltd. v. Now Casting, Inc., 550 F. Supp. 2d 1123, 1132 (C.D. Cal. 2007).

Plaintiff points out, and the Court notes, that CDPH has waited over a year to add counterclaims that could just as easily have been brought from the outset. But delay, by itself, is insufficient to justify denial of leave to amend. DCD Programs, Ltd. V. Leighton, 833 F.2d at 186. "Only where prejudice is shown or the movant acts in bad faith" should leave to amend be denied. U.S. v. Webb, 655 F.2d at 980.

On the other hand, "occasionally, delay in itself may be evidence of bad faith." Larios v. Nike Retail Servs., Inc., No. 11CV1600-GPC-NLS, 2013 WL 4046680, at *3 (S.D. Cal. Aug. 9, 2013). The counterclaims are being added only after the Court ruled that it would not dismiss Plaintiff's civil rights claims from the case. One explanation for that might be that CDPH has brought these counterclaims in retaliation for Plaintiff's continuing to prosecute those claims after the other claims were dismissed.

Along those lines, Plaintiff alleges CDPH seeks leave to amend its counterclaim to "put pressure on OSJ" and "dramatically increase the costs of litigating this case." (Opp'n at 17.)  In that view of things, the delay in bringing the claims could be seen as evidence of bad faith.  See, e.g., Bonin v. Calderon, 59 F.3d 815, 846 (9th Cir. 1995) (habeas petitioner's motion to amend petition, brought months after the petition was taken under submission and only after court denied his other pending petition, was in bad faith).

But another, equally plausible explanation is that CDPH waited to bring this petition until after it had secured a legal determination that the masks did in fact belong to it.  Although Defendants have maintained all along that the masks belonged to CDPH and no lien could exist on them, it is possible that CDPH only felt sure that the counterclaims were viable after the Court determined the ownership and lien issues.  Additionally, it appears from the papers that a parallel criminal investigation may now be under way, the owner of GPI and Amerinova having been formally charged with theft.  (CC-TPC, ¶ 39.)  The advancement of that criminal case, too, could have made CDPH more confident in pressing the counterclaims at this time.  Thus, the Court cannot say the counterclaims are being asserted now in bad faith.

Absent a strong showing that the counterclaims are asserted in bad faith, the Court will only deny leave to file them if the filing would be prejudicial to Plaintiff – that is, if it would "greatly alter[] the nature of the litigation." Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990).  At oral argument, Plaintiff's counsel correctly noted that the Court's

previous order narrowed the scope of the litigation considerably. Thus the addition of counterclaims now does somewhat alter the litigation, forcing Plaintiff to act as a defendant to tort claims that are distinct from the civil rights claims that survived the prior order. But in this case, the counterclaims largely share the factual predicate of Plaintiff's remaining claims – not to mention the claims previously brought by Plaintiff in this case. Plaintiff was prepared to litigate similar claims in the opposite direction and will presumably be able to quickly grasp the nature of these claims and defend against them. (See Doc. 1-5, FAC (asserting claims for conversion and trespass to chattels).) Given that trial is still a year away and the fact discovery cutoff is still almost seven months away, (Dkt. No. 54, Scheduling Order), Plaintiff is not prejudiced by the introduction of these counterclaims at this time.

**2.   Futility of Amendment**

Plaintiff suggests that amendment would be futile because CDPH can not prevail, as a matter of law, on the claims it intends to assert as the counterclaim.

"[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." Miller v. Rykoff-Sexton, Inc., 845 F.2d 209, 214 (9th Cir. 1988). Therefore, an amendment is "futile" only if it would clearly be subject to dismissal. DCD Programs, Ltd., 833 F.2d at 188.

CDPH's purported counterclaims allege that Plaintiff is liable for conversion, trespass to chattels, and violation of California Penal Code 496(c). Conversion is the wrongful exercise of dominion

9

over the property of another. "The elements of a conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." Hernandez v. Lopez, 180 Cal. App. 4th 932, 939 (2009). Conversion is a strict liability tort; even inadvertent dominion over another's property is redressible in tort. Oakdale Vill. Grp. v. Fong, 43 Cal. App. 4th 539, 544 (1996). Even "[a]n innocent buyer from one without title or right to sell is ordinarily liable for conversion." 5 Witkin, Summary of California Law § 716 (10th ed. 2005).

Given the law of conversion in California, it would appear CDPH can state a claim for conversion. CDPH had a right to possession of the property, and the counterclaims allege both Plaintiff's conversion by a wrongful act and damages. Whether those pleadings will turn out to be factually justified is, of course, a question for another day.

Plaintiff nonetheless argues that it cannot be held liable for conversion because, when it exercised control and dominion over the masks, the Court had not yet determined who had the right to possession and ownership of the masks. (Opp'n at 15-16.) But this is a deeply puzzling argument. The right to possess the property is one of the elements that must be proven in a conversion claim; to say that no conversion can exist until that element has been adjudicated would render the tort largely moot. At the very least, it would mean that plaintiffs seeking to be made whole in conversion cases would have to seek declaratory judgment as to a right to possession *before* a claim for conversion could lie.

Plaintiff cites no case suggesting that is the law in California or at common law.[2]

Plaintiff also argues that, because the ownership question was not yet adjudicated, Defendants cannot state a claim for violation of California Penal Code § 496, which creates a private right of action against someone who knowingly receives stolen goods, or for any "person whose principal business is dealing in or collecting merchandise" who receives stolen goods "under circumstances that should cause the person to make reasonable inquiry" as to the seller's right to the property. CDPH alleges that the masks were stolen and that OSJ and Leslee Sports wrongfully acquired possession of them, either knowing they were stolen or under circumstances in which they should have made a reasonable inquiry as to title.

The Court concludes that the fact that the claim was not yet adjudicated does not mean CDPH will not be able to show the necessary state of mind to pursue a claim under § 496. Although the fact that the claim to the masks was disputed is *relevant* to state of mind, it is not dispositive. It is possible that the dispute was bogus and in bad faith[3] and that Plaintiff and Leslee Sports had knowledge of that fact. What Plaintiff or Leslee Sports

---

[2] For the same reasons, CDPH can state a claim for trespass to chattels, which under California law requires a similar showing of a right to possession, but deals with "interferences with possession of personal property not sufficiently important to be classed as conversion." Intel Corp. v. Hamidi, 30 Cal. 4th 1342, 1350 (2003).

[3] For example, CDPH plausibly alleges that Stephen Guarino was the owner of both GPI and Amerinova, that CDPH entered into a valid storage contract with Amerinova, and that after that contract expired GPI sent back-dated invoices in an attempt to claim that it, too, should receive a storage fee. (CC-TPC, ¶¶ 12-14.)

11

understood about the claim they were buying is therefore a factual matter best dealt with at a later stage in the litigation.

For all the above reasons, the Court concludes that it is not futile for CDPH to add the proposed counterclaims.

**B.     Joinder of Parties**

CDHP is attempting to join Leslee Sports as a defendant in its counterclaim against OSJ.  Plaintiff does not argue that CDPH cannot meet the requirements of permissive joinder of parties.  Briefly, to add a party under the permissive joinder rule, the claim involving the new party must "relat[e] to or aris[e] out of the same transaction or occurrence or series of transactions or occurrences," and some "question of law or fact common to all defendants" must arise.  Fed. Rules of Civ. Proc. 20(a)(2).

CDPH alleges that both OSJ and Leslee Sports wrongfully acquired possession and ownership of the respirator masks in 2012 through a series of transactions between Guarino and companies controlled by him.  (CC-TPC <u>generally</u>.)  Specifically, it is alleged that Leslee Sports entered into negotiations with Guarino to purchase Global Protection's interest in the respirator masks.  (<u>Id.</u> at ¶ 26.)  Thereafter, Leslee Sports purportedly purchased Global Protection's storage claims from Rhino Pets and subsequently, sold the storage claims to OSJ.  (<u>Id.</u> at ¶¶ 28-29.)  CDPH further alleges OSJ and Leslee Sports conspired to conceal their transactions from CDPH.  (Id. at ¶ 30.)  Thus, the claims against Leslee Sports arise out of the same set of transactions or occurrences as the claims against OSJ.

Because OSJ acquired its putative interest in the masks from Leslee Sports, the claims against Leslee Sports share several

12

common questions of fact with the claims against OSJ, including whether Leslee Sports knew or had reason to know that the masks belonged to CDPH; whether GPI, Global Safety, or Stephen Guarino misled Leslee Sports; and whether Leslee Sports and OSJ conspired to conceal their transactions from CDPH. Therefore, the Court concludes that the second requirement for joinder under Rule 20(a) is also met.

CDPH has properly satisfied the requirements of permissive joinder of defendants under Rule 20(a).

**IV. Conclusion**

The Court GRANTS Defendant CDHP's Motion for Leave of the Court to File its Counterclaims and Third Party Complaint.

IT IS SO ORDERED.

Dated: March 25, 2015

DEAN D. PREGERSON

United States District Judge

13